An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1047

Filed 1 July 2026

Wayne County, Nos. 19CR054650-950, 19CR054653-950, 22CR000767-950

STATE OF NORTH CAROLINA

v.

JOSHUA SOLOMON

Appeal by defendant from judgement entered 12 September 2024 by Judge Robert C. Roupe in Wayne County Superior Court. Heard in the Court of Appeals 19 May 2026.

*Attorney General Jeff Jackson, by Assistant Attorney General Sara H. Player, for the State.*

*Phoebe W. Dee for defendant.*

FREEMAN, Judge.

Defendant appeals from judgement entered upon a jury verdict finding him guilty of felony breaking and entering, felony possession of stolen goods, conspiracy to commit felony breaking and entering, and possession of firearm by felon. Defendant pleaded guilty to attaining habitual felon status. On appeal, defendant argues that (1) the trial court's inquiry into defendant's capacity to proceed was

inadequate, (2) the trial court improperly accepted defendant's waiver of his right to a jury trial for the habitual felon charge, and (3) the trial court improperly denied defendant's motion to dismiss the charge of conspiracy to commit felony breaking and entering. After careful review, we conclude that defendant received a fair trial free from prejudicial error.

## I.    Factual and Procedural Background

On 12 October 2019, three men entered private property in a vehicle. The homeowner's security system recorded a video showing a masked man—wearing patchwork jeans and a distinctive patterned beaded necklace—walking into the carport on the property. Two of the men were carrying weapons and are seen on the video having a discussion at multiple points. The masked man was carrying a handgun with an extended magazine clip. After one of the armed men removed a pair of Nike Air Jordans from the carport, the masked man attempted to enter the house. Once the victim said, "don't even think about it," through the surveillance system's speaker, the masked man fled. The three men then left together in the vehicle. The victim posted the video footage on social media, and defendant's family members subsequently identified the masked man as defendant. The victim reported the incident to law enforcement, and defendant was later arrested.

On 3 January 2023, defendant was indicted for felony breaking and entering, felony larceny after breaking and entering, felony possession of stolen goods, conspiracy to commit felony breaking and entering, and felony possession of firearm

by felon. On 6 January 2023, defendant was indicted for attaining habitual felon status.

Defendant's attorney withdrew on 3 April 2023; defendant then represented himself. During the pre-trial proceedings, the State became concerned about defendant's ability to assist in his own defense because defendant "consistently argued incorrect" or "irrelevant or grossly irrelevant" law, stated that he "did not understand what his charges were" despite having a copy of the indictments, and was confused about trial procedure. The State filed a motion questioning defendant's capacity to proceed on 9 November 2023.

On 11 December 2023, the trial court issued an order appointing a certified forensic evaluator. On 6 March 2024, defendant reported that he had received a "virtual evaluation" two or three weeks after the trial court ordered the evaluation. The trial court received the forensic evaluator's report on 14 May 2024, which indicated that the evaluation had been completed on 19 December 2023 over the phone. The report ultimately was filed with the court on 14 May 2024.

On 11 June 2024, the trial court held a competency hearing, and all parties agreed that defendant was competent to stand trial. The trial court said, "I've not observed anything that makes me think [defendant is] not competent to address the cases. And he's mentioned some complex subjects so he seems to have some understanding of it that he's raised, and I don't see anything that prevents him from going forward. . . . I believe he is competent." The trial court also noted:

> I've had a good chance to talk with [defendant] today and on other days. And while I recognize that [he] disagree[s] about some things, and [he has] a right to disagree about some things, generally by the end of the conversation [he] seem[s] to understand what [he is] saying and [his] perspective. And I don't directly observe anything that concerns me concerning capacity going forward in this case.

The trial court also informed defendant that the grand jury indicted him for attaining habitual felon status and that the allegation could be addressed in a second hearing. That same day, in its written order, the trial court declared defendant competent to stand trial.

After the competency determination was made, the matter proceeded to pretrial litigation, with a different judge presiding over the proceedings. The trial court, said that his "understanding from speaking to counsel [was] that the findings of the evaluator were that this gentleman is capable and that [the trial court presiding over the competency hearing] at least orally, entered such an order."

On 9 September 2024, the matter proceeded to trial. The State presented video footage from the victim's surveillance cameras on 12 October 2019. The footage showed that three men arrived at the victim's property in a black SUV with substantial dents on the driver's side doors. Further, one of the men wore patchwork jeans and a unique beaded necklace. At trial, law enforcement testified that defendant's driver's license was discovered in a black SUV of the same make and model with identical damage, the same patchwork jeans were found at defendant's

residence, and defendant was wearing the same necklace when law enforcement arrived at defendant's home.

At trial, the victim testified to a live stream and social media post they viewed on defendant's Facebook account. Defendant asked the victim in his Facebook livestream why they could not handle this "on the streets instead of contacting the police." Defendant also posted a photo of himself wearing a beaded necklace that matched the one worn by the masked man.

At the close of the State's evidence, defendant filed a motion to dismiss the charges, arguing that the State presented insufficient evidence. The trial court denied defendant's motion. After the jury retired for deliberation, the trial court again informed the defendant that he had "been indicted for having obtained the status of being an habitual felon" and specified:

> If the jury finds you guilty of the felony, at that point I will need you to either—and I want you to understand when I'm saying this to you I have no position as to what you do. It is your decision sir. Okay? If the jury finds you guilty of the felony again, I'm not predicting what they will do, nor do I have an opinion, but if they do, at that point you will either need to decide to plead guilty to having obtained the status of being an habitual felon, plead not guilty to that status, or you can remain silent. If you remain silent, I will accept that as a not guilty plea. You do not have to tell me what you intend to do, but I do want you to think about it so if we get to that stage we know how to move forward.

On 9 September 2024, the jury found defendant guilty of felony breaking and entering, felony possession of stolen goods, conspiracy to commit felony breaking and

entering, and possession of firearm by felon. Defendant then pleaded guilty to habitual felon status. The trial court sentenced defendant to concurrent sentences of 108–142 months' imprisonment for possession of firearm by felon and 96–128 months' imprisonment for felony breaking and entering. The trial court also sentenced defendant to consecutive sentences of 96–128 months' imprisonment for felony larceny and 36–56 months' imprisonment for conspiracy to commit felony breaking and entering. Defendant gave oral notice of appeal in open court.

## II.    Jurisdiction

This Court has jurisdiction to review "any final judgment of a superior court, other than one based on a plea of guilty or nolo contendere." N.C.G.S. § 7A-27(b)(1) (2025).

## III.    Standard of Review

The trial court's inquiry into defendant's capacity to proceed presents a question of law that we review de novo. *State v. Flow*, 384 N.C. 528, 546 (2023). We review a "properly preserved appeal of a denial of a motion to dismiss for insufficient evidence" de novo. *State v. Hunt,* 250 N.C. App. 238, 252 (2016). "Whether the trial court violated a statutory mandate is a question of law, which we review de novo on appeal." *State v. Hamer*, 272 N.C. App 116, 119 (2020).

## IV.    Discussion

On appeal, defendant contends "the capacity proceedings conducted by the trial court were so irregular and insufficient that they were constitutionally inadequate."

Defendant also argues that the trial court erred by denying his motion to dismiss and that his "waiver of his right to a jury trial for his habitual felon charge was invalid." We address each argument in turn.

## A. Capacity Proceedings

First, defendant argues that the competency proceedings in this case were so irregular that they violated his constitutional right to a fair trial. Defendant specifically contends that: the evaluation was not submitted to the trial court within the time period specified by the statute; the trial court did not make written finding of facts in its capacity order; the evaluator did not access defendant's records; and the evaluation was conducted over the phone, which did not give the evaluator a sufficient opportunity to observe defendant.

Incapacity to proceed is a condition described as a "mental illness or defect" that renders a defendant "unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner." N.C.G.S. § 15A-1001 (2025). "The question of capacity to proceed may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court." *Id*. § 15A-1002 (2025). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors

standing alone may, in some circumstances, be sufficient." *Drope v. Missouri*, 420 U.S. 162, 180 (1975).

"Although the present statute requires the court to conduct a hearing when a question is raised as to a defendant's capacity to stand trial, no particular procedure is mandated. The method of inquiry is still largely within the discretion of the trial judge." *State v. Gates*, 65 N.C. App. 277, 282 (1983). The statutory procedure to assess a defendant's capacity requires "impartial medical experts, including forensic evaluators approved under the rules for the Commission for Mental Health, Developmental Disabilities, and Substance Abuse Services, to examine the defendant and return a written report" to the court. N.C.G.S. § 15A-1002(b)(1a).

"The constitutional and statutory rights to a competency hearing are not equivalent. . . . The constitutional right to a competency hearing cannot be waived. But for the constitutional right to apply, there must be substantial evidence of the defendant's incompetency." *State v. Wilkins*, 386 N.C. 923, 930 (2024) (cleaned up). The statutory procedure for determining competency to proceed "jealously guards" defendant's right to a fair trial. *State v. Taylor*, 298 N.C. 405, 410 (1979).

In *Taylor*, the defendant argued that the trial court's failure to order an evaluation "per se deprived him of a fair trial and amounted to a denial of due process in that it failed to adequately protect his right not to be convicted while incompetent." *Id*. In that case, the trial court "conducted a pretrial hearing, found facts, and concluded that [the] defendant had the mental capacity to proceed to trial" without

an evaluation. *Id.* at 409. During the hearing, "in response to questioning from the trial judge, [the defendant] showed himself to be mentally alert and ready to go on with the trial." *Id.* Our Supreme Court noted:

> [T]he United States Supreme Court has never held any particular procedure, such as the one advanced by [the] defendant, to be constitutionally mandated for the protection of a defendant's right not to be tried or convicted while incompetent to stand trial. Rather, the Court has generally indicated that in order to comport with due process, the procedure utilized must "jealously guard" a defendant's right to a fair trial.

*Id.* (citation omitted). The question of the defendant's competency was raised—as required by N.C.G.S. § 15A-1002(b)(3)—a hearing took place, and the defendant had the ability to introduce evidence at that hearing. *Id.* at 411. The Court held that the "procedure is, on its face, constitutionally adequate to protect a defendant's right not to be tried while legally incompetent." *Id.*

Here, the State requested that defendant be evaluated for competency on 9 November 2023 due to the irrational legal arguments defendant was making. The trial court ordered that defendant be evaluated on 11 December 2023, and the forensic evaluator's report listed 19 December 2023 as the date of evaluation. Defendant told the trial court that he had been evaluated two or three weeks after the trial court ordered the evaluation.

Like *Taylor*, the issue of defendant's capacity to proceed was raised, a hearing took place, and defendant had the ability to introduce evidence. Further, defendant

had an evaluation shortly after the he was ordered to receive one, a report was timely made by the evaluator that said, "there is no evidence that he is currently suffering from any mental illness that could impair his current capacity to proceed," and the report was given to the court. Also, like *Taylor*, defendant engaged with the trial court presiding over the capacity proceedings and showed himself to be ready to go to trial after the trial court did not observe "anything that concern[ed him] concerning [defendant's] capacity." Accordingly, the procedure was sufficiently followed to be constitutionally adequate to protect defendant's due process right not to be tried while incompetent, *see Taylor*, 298 N.C. at 411, and the trial court did not err in its inquiry into defendant's competency to proceed.

### B. Motion to Dismiss

Next, defendant argues that the trial court erred by denying his motion to dismiss the charge of conspiracy to commit felony breaking and entering because the State did not produce substantial evidence to support the existence of a conspiracy.

To survive a motion to dismiss there must be "substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense." *State v. Collins*, 283 N.C. App. 458, 465 (2022). "Substantial evidence is, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *State v. Vause*, 328 N.C. 231, 237. "If there is more than a scintilla of competent evidence to support the allegations in the warrant or indictment, it is the

court's duty to submit the case to the jury." *State v. Horner*, 248 N.C. 342, 344–45 (1958).

> [S]o long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also permits a reasonable inference of the defendant's innocence. The test for sufficiency of the evidence is the same whether the evidence is direct, circumstantial or both.

*State v. Stimpson*, 256 N.C. App 364, 368 (2017) (quoting *State v. Bradshaw*, 366 N.C. 90, 92–93 (2012)).

If the State relies on circumstantial evidence, "[t]he circumstantial evidence must . . . create in the minds of the jurors a moral certainty of the defendants' guilt, to the exclusion of any other reasonable hypothesis." *State v. Aleem*, 49 N.C. App. 359, 363 (1980). However, "[c]ircumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Stone*, 323 N.C. 447, 452 (1988).

> A criminal conspiracy is an agreement between two or more persons to do an unlawful act in an unlawful way or by unlawful means. To constitute a conspiracy it is not necessary that the parties should have come together and agreed in *express* terms to unite for a common object: "A mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned to constitute the offense."

*State v. Bindyke*, 288 N.C. 608, 615–16 (1975). "The existence of a conspiracy may be shown with direct or circumstantial evidence. The proof of conspiracy 'may be . . . established by a number of indefinite acts, each of which, standing alone, might have

little weight, but taken collectively they point unerringly to the existence of a conspiracy.'" *State v. Lawrence*, 352 N.C. 1, 25 (2000).

For example, in *State v. Brewton*, the defendant and another individual rode together in a borrowed car to an apartment complex where the defendant murdered the man who killed the individual's brother. 173 N.C. App. 323, 328 (2005). The other individual said nothing to the defendant after hearing the gunshots and drove him back to his car. *Id.* Police stopped the other individual when he was returning the car and he told a false story to cover up where the two men had gone. *Id.* This Court held that "[a] reasonable juror could infer from this evidence an implicit agreement to work together to accomplish the goal of revenge for the murder of [the individual's] brother." *Id.*

Here, the State offered video evidence showing three men arriving to the residence in the same vehicle, one of whom was a masked man wearing patchwork jeans and a beaded necklace. The jeans were later found at defendant's residence; defendant was wearing the beaded necklace when initially questioned by law enforcement; and defendant's driver's license was found in a car with the same make, model, and damage as the car shown in the video.

The masked man seen on the video footage was wearing pants identical to the pair later recovered at defendant's residence and an identical necklace that defendant was observed wearing numerous times. The masked man arrived with two other men and was seen discussing with them and leaving together on the video. This is more

than a scintilla of evidence to show both that defendant was the perpetrator of the offense and that there was a mutual, implied understanding between the defendant and the two other men. While defendant argues that there are several other possible hypotheses that the jurors could have drawn, the evidence need not rule out every hypothesis of innocence to withstand a motion to dismiss. *See Stone*, 323 N.C. at 452. Therefore, the trial court did not err by denying defendant's motion to dismiss the conspiracy charge.

**C. Waiver of Right to Jury Trial**

Finally, defendant argues that his jury trial waiver was invalid because neither the plea transcript nor the plea colloquy with the trial court informed him of what he was waiving. Defendant pleaded guilty to attaining habitual felon status after the jury convicted him of felony breaking and entering, felony possession of stolen goods, conspiracy to commit felony breaking and entering, possession of firearm by felon. Defendant gave oral notice of appeal of his convictions in open court but did not reserve the right of appeal for his guilty plea prior to entry of the judgment.

"Any party entitled by law to appeal from a judgment . . . in a criminal action may take appeal by (1) giving oral notice of appeal at trial, or (2) filing notice of appeal with the clerk of superior court. . . ." N.C. R. App. P. 4(a)(1).

> A defendant who has been found guilty, or entered a plea
> of guilty or no contest to a felony, is entitled to appeal as a
> matter of right the issue of whether his or her sentence is

supported by evidence introduced at the trial and sentencing hearing only if the minimum sentence of imprisonment does not fall within the presumptive range for the defendant's prior record or conviction level and class of offense. Otherwise, the defendant is not entitled to appeal this issue as a matter of right but may petition the appellate division for review of this issue by writ of certiorari.

N.C.G.S § 15A-1444(a1) (2025); *see State v. Hadden*, 175 N.C. App. 492, 496–97 (2006); *see also*, *e.g.*, *State v. McCoy*, 171 N.C. App. 636, 638 (2005) ("While this Court cannot hear defendant's direct appeal, it does have the discretion to consider the matter by granting a petition for writ of certiorari.").

Defendant neither preserved this issue for appeal nor filed a petition for writ of certiorari to review this issue; therefore, this Court does not have jurisdiction to reach the merits of this issue.

## V.    Conclusion

The evidence in this case established that the inquiry into defendant's competency was constitutionally adequate and that the trial court did not err in dismissing defendant's motion to dismiss the charge of conspiracy. We do not have jurisdiction to consider whether defendant's waiver of a jury trial was adequate.

NO ERROR.

Judges STROUD and HAMPSON concur.

Report per Rule 30(e).